

**IT IS ORDERED as set forth below:**

**Date: September 29, 2021**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | : | CASE NUMBERS |
| | : | |
| HENRY C. Hardin, III, | : | BANKRUPTCY CASE |
|    Debtor. | : | 18-70395-LRC |
| _____ | : | |
| CATHY L. SCARVER | : | |
| as Chapter 7 Trustee for the Estate of | : | ADVERSARY PROCEEDING |
| HENRY C. HARDIN, III, | : | NO. 19-05221-LRC |
| | : | |
|    Plaintiff, | : | |
| | : | |
|    v. | : | |
| | : | |
| ZURICH AMERICAN INSURANCE | : | IN PROCEEDINGS UNDER |
| COMPANY, AMERICAN ZURICH | : | CHAPTER 7 OF THE |
| INSURANCE COMPANY, and THE | : | BANKRUPTCY CODE |
| ZURICH SERVICES CORPORATION, | : | |
| | : | |
|    Defendants. | : | |

## <u>ORDER</u>

Henry C. Hardin, III ("Debtor") filed a Chapter 7 bankruptcy after three of his

creditors, Zurich American Insurance Company, American Zurich Insurance Company, and/or The Zurich Services Corporation (the "Defendants"), obtained a judgment against him and initiated a suit to avoid the transfer of his home to his wife, Linda Hardin ("Hardin").  Cathy L. Scarver ("Plaintiff"), the Chapter 7 trustee of Debtor's estate (the "Estate") filed a complaint ("Complaint") seeking a determination of the validity or extent of a lien asserted by the Defendants.  Plaintiff has filed a *Motion for Partial Summary Judgment* (Doc. 17, the "Motion"), seeking judgment as to Count I of the Complaint in the form of an order declaring that Defendants have no valid lien on any property of the Estate and/or that any lien or interest that Defendants may have on property of the Estate is inferior to Plaintiff's interest.  On November 13, 2020, the Court held a hearing (the "Hearing") on the Motion and then took the matter under advisement. Subsequently, it appears that Plaintiff settled the Estate's avoidance causes of action against Hardin in exchange for $897,500 (the "Settlement Proceeds").  *See* Case Number 18-70395-LRC (the "Bankruptcy Case"), Doc. 191.

This matter constitutes a core proceeding, over which this Court has subject matter jurisdiction.  *See* 28 U.S.C. § 157(b)(2)(K); § 1334.  For the reasons stated below, the Court agrees with Defendants that, with the exception of certain assets, Plaintiff is not entitled to summary judgment.[1]

---

[1]  In ruling on the Motion, the Court has considered the Complaint, the Answer (Doc. 4), Plaintiff's Statement of

## UNDISPUTED FACTS

Defendants provided workers compensation insurance to Professional Management Services Group, Inc. ("PMSG"), a Florida corporation owned by the Debtor between 2008 and 2012. (Plaintiff's SUMF, ¶ 4; Defendants' SUMF Response, ¶ 4). PMSG defaulted on its obligations to Defendants. (Plaintiff's SUMF, ¶ 5; Defendants' SUMF Response, ¶ 5). On May 2, 2013, Defendants commenced an arbitration against PMSG and other affiliated companies before the American Arbitration Association (Case Nos. 51 20 1300 0514 and/or 51 195 514 13) to resolve disputes arising under the parties' workers compensation insurance program. (Defendants' SUMF, ¶ 3; Plaintiff's SUMF Response, ¶ 3). On May 7, 2015, the arbitrators entered a final award in favor of Defendants and against PMSG (the "Final Award"). (Defendants' SUMF, ¶ 4; Plaintiff's SUMF Response, ¶ 4). The Final Award and related judgment require PMSG to (a) pay Defendants $16,307,224 in principal and interest, and (b) post with Defendants an additional $1,355,480 in collateral. (Defendants' SUMF, ¶ 4; Plaintiff's SUMF Response, ¶ 4).

On June 28, 2016, Defendants filed a complaint against the Debtor in the United

---

Material Facts as to Which There is No Genuine Issue to be Tried (Doc. 18) ("Plaintiff's SUMF"), Defendants' Response to Plaintiff's Motion (Doc. 23) ("Defendants' Response"), Defendant's Response to Plaintiff's SUMF ("Defendants' SUMF Response") and Statement of Additional Material Facts (Doc. 24) ("Defendants' SUMF"), Plaintiff's Reply in Support of the Motion (Doc. 32) ("Plaintiff's Reply"), Supplemental Statement of Undisputed Material Facts ("Plaintiff's Supplemental SUMF"), and Response to Defendants' Material Facts (Doc. 33) ("Plaintiff's SUMF Response"), and Plaintiff's Supplemental Memorandum of Law in Support of the Motion (Doc. 42) ("Plaintiff's Supplemental Memo").

States District Court for the Northern District of Georgia (Case No. 1:16-cv-02312-MLB) seeking a determination that the Debtor was responsible for PMSG's debt to Defendants (the "Alter Ego Action"). (Plaintiff's SUMF, ¶ 11; Defendants' SUMF Response, ¶ 11). On June 8, 2018, a jury entered a verdict in the Alter Ego Case, and the United States District Court for the Northern District of Georgia entered a judgment on the jury verdict against Debtor and in favor of Defendants in the amount of $18,102,582. (Plaintiff's SUMF, ¶¶ 14–15; Defendants' SUMF Response, ¶¶ 14–15) (the "Judgment").

Defendants recorded the Judgment and obtained a writ of *fieri facias* (the "Fi Fa") from the Superior Court of Gwinnett County, Georgia on July 6, 2018. (Plaintiff's SUMF, ¶ 16; Defendants' SUMF Response, ¶ 16). At no time have Defendants filed a writ of *fieri facias* in any county in Georgia other than Gwinnett County. (Plaintiff's SUMF, ¶ 17; Defendants' SUMF Response, ¶ 17). To date, Defendants have recovered $575,370 from Debtor towards the Judgment through post-judgment collection. (Defendants' SUMF, ¶ 18; Plaintiff's SUMF Response, ¶ 18). Debtor currently owes Defendants a total of $17,527,212 in principal, plus post-judgment interest. (Defendants' SUMF, ¶ 19; Plaintiff's SUMF Response, ¶ 19). On July 18, 2018, Defendants filed a judgment lien certificate with the Florida Department of State as to Debtor. (Plaintiff's SUMF, ¶ 57; Defendants' SUMF Response, ¶ 57).

In 1998, Debtor purchased his residence located at 3245 Town Manor Circle,

Dacula, Gwinnett County, Georgia (the "Home").  (Plaintiff's SUMF, ¶ 1; Defendants'

SUMF Response, ¶ 1).  On October 11, 2017, Debtor transferred his one-half interest in

the Home to Hardin.  (Plaintiff's SUMF, ¶ 13; Defendants' SUMF Response, ¶ 13).

On August 1, 2015, Hardin entered a two-year option to purchase real property

located at 1947 Tapawingo Drive, Gainesville, Hall County, Georgia (the "Lake House").

(Plaintiff's SUMF, ¶ 6; Defendants' SUMF Response, ¶ 6).  Between July 2015 and

December 2016, monthly checks were drawn from either the Debtor and Hardin's joint

bank account or the Debtor's bank account to purchase the Lake House.  (Plaintiff's

SUMF, ¶ 7; Defendants' SUMF Response, ¶ 7).  The parties dispute whether the Lake

House checks were drawn from just the joint bank account or the joint bank account and

the Debtor's own bank account, but Plaintiff contends that this distinction is irrelevant

and immaterial.  (Defendants' SUMF, ¶ 31; Plaintiff's Supplemental SUMF, ¶ 7).  In

August 2017, Hardin purchased the Lake House. (Plaintiff's SUMF, ¶ 12; Defendants'

SUMF Response, ¶ 12).  Hardin sold the Lake House in November 2019.  (Defendants'

SUMF, ¶ 33; Plaintiff's SUMF Response, ¶ 33).

In 2003, the Debtor purchased real property located at 7527 Highway 326,

Lavonia, Franklin County, Georgia (the "Farmhouse").   (Plaintiff's SUMF, ¶ 2;

Defendants' SUMF Response, ¶ 2).  On December 15, 2011, Debtor transferred his

interest in the Farmhouse to Hardin.  (Plaintiff's SUMF, ¶ 3; Defendants' SUMF

5

Response, ¶ 3).

In December 2015, Restorative Health of North Georgia LLC ("Restorative Health") was formed in Georgia. (Plaintiff's SUMF, ¶ 8; Defendants' SUMF Response, ¶ 8). Between June 13, 2016, and January 2017, checks were issued from the Debtor and Hardin's joint bank account to purchase an interest in Restorative Health (the "RH Interest"). (Plaintiff's SUMF, ¶ 9; Defendants' SUMF Response, ¶ 9). Defendants did not apply to a court for a charging lien on the RH Interest. (Plaintiff's SUMF, ¶ 10; Defendants' SUMF Response, ¶ 10). Debtor and Hardin contend that Hardin alone owns the RH Interest. (Defendants' SUMF, ¶ 44; Plaintiff's SUMF Response, ¶ 44).

On the Petition Date, Debtor owned 80% of Executive Management Group, Inc. ("Executive"). (Defendants' SUMF, ¶ 46; Plaintiff's SUMF Response, ¶ 46). A purchase and sale agreement was entered into for Executive's office building on November 23, 2018. (Defendants' SUMF, ¶ 48; Plaintiff's SUMF Response, ¶ 48). Defendants did not obtain a charging order for Debtor's stock in Executive (the "Executive Stock"). (Plaintiff's SUMF, ¶ 62; Defendants' SUMF Response, ¶ 62).

In July 2018, Defendants filed a fraudulent conveyance complaint against Debtor and Hardin with regard to the Home in the United States District Court for the Northern District of Georgia (Case No. 18-03319) (the "Fraudulent Transfer Case").[2] (Defendants'

---

[2] The complaint filed in the Fraudulent Transfer Case seeks avoidance of the transfer of the Home, attachment of the

6

SUMF, ¶ 20; Plaintiff's SUMF Response, ¶ 20). On September 25, 2018, Defendants filed their *lis pendens* in Gwinnett County as to the Home. (Plaintiff's SUMF, ¶ 29; Defendants' SUMF Response, ¶ 29). Defendants did not file a *lis pendens* as to the Fraudulent Transfer Case in any Georgia county other than Gwinnett County. (Plaintiff's SUMF, ¶ 30; Defendants' SUMF Response, ¶ 30). On October 1, 2018, Zurich filed a Motion for Leave to File First Amended Complaint in the Fraudulent Transfer Case (the "Motion for Leave to Amend"), seeking to add claims to avoid additional transfers from the Debtor to Hardin, including Debtor's transfer of cash, the Farmhouse, the Lake House, and the interest in Restorative Health. Answer, ¶ 23; Defendants' SUMF, ¶ 31; Plaintiff's SUMF, ¶ 31. The District Court had not granted the Motion for Leave to Amend as of the Petition Date. Answer, ¶ 25; Defendants' SUMF ¶ 35; Plaintiff's SUMF ¶ 35.

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on the Petition Date, and Plaintiff was appointed as the Chapter 7 trustee of the Estate. On December 30, 2020, Plaintiff filed in the Bankruptcy Case a Motion to Approve Settlement Agreement, which included a copy of Plaintiff's agreement with Hardin (the "Settlement Agreement") detailing Hardin's payment of the Settlement Proceeds in

---

Home, and other relief, pursuant to O.C.G.A. §§ 18-2-74(a)(1) and (a)(2). These provisions are effective with regard to "transfers or obligations that occurred on or after July 1, 2015." 4 Ga. Jur. § 2:1 (citing *RES-GA McDonough, LLC v. Taylor English Duma LLP*, 302 Ga. 444, 807 S.E.2d 381 (2017)).

satisfaction of all claims (apart from those relating to tax refunds) Plaintiff had or might have had against her.  (Bankruptcy Case, Doc. 191).  There were no objections to the motion to approve the settlement, and the Court approved it.  The Settlement Agreement specifically notes that upon payment, Plaintiff would "cause the [Fraudulent Transfer Case] to be dismissed with prejudice."  *Id*. at Exh. A. ¶ 6.  On April 8, 2021, the Fraudulent Transfer Case was dismissed.  (Dist. Ct. Case No. 18-03319, Doc. 42).

## DISCUSSION

In the Motion, Plaintiff contends that Defendants have no lien on any assets that could be considered property of the Estate or could become property of the Estate.  Specifically, Plaintiff argues that, because Debtor did not own the Home at the time Defendants obtained the Fi Fa, Defendants did not have a lien on the Home on the Petition Date.  Plaintiff further argues that the Defendants have no lien on the Farmhouse or the Lake House because Debtor did not own these properties and because Defendants did not record the Judgment in the counties in which the Lake House and Farmhouse are located.  Additionally, Plaintiff contends that Defendants have no lien on the Executive Stock and/or the proceeds from the sale of the real estate owned by Executive because such assets are choses in action to which a lien does not attach automatically and Defendant took no steps prior to the bankruptcy filing to attach the lien.  As to the RH Interest, Plaintiff takes the position that Defendant's lien could not attach because Debtor

8

did not own the RH Interest, which is a chose in action, and Defendants took no steps to attach the lien. Finally, Plaintiff argues that Defendant's lien could not have attached to any of the Estate's avoidance causes of action or their potential recoveries under settled bankruptcy caselaw.

At the Hearing, in response to the Court's question, Defendants did not concede that they have no judicial lien on Estate assets but focused their argument on their contention that they have an equitable lien on the assets identified in the Motion. Defendants assert that substantial questions of material fact preclude summary judgment. Defendants argue that they were not able to perfect their judicial lien because Debtor fraudulently transferred property to Hardin, without value, to thwart Defendants' collection. Moreover, Defendants argue they have an equitable lien because, but for Debtor's alleged fraud, they could have properly perfected their lien. Defendants contend that there is mounting evidence demonstrating Debtor's fraud, thus summary judgment should be awarded in their favor. Alternatively, at a minimum, the evidence surrounding Debtor's transfers creates issues of material fact incapable of resolution at the summary judgment stage and warranting a further opportunity for discovery.

As discussed above, following the Hearing, Plaintiff settled her avoidance actions and released her claims to recover the transferred assets in exchange for the Settlement Proceeds. Consequently, the Court assumes that Plaintiff's request for a determination of

9

the validity or extent of liens is now limited to the Executive Stock, any proceeds realized upon the sale of the Executive office building, and the Settlement Proceeds, as no other property discussed by the parties appears to be property of the Estate or could become property of the Estate.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, the Court will grant summary judgment only if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918-19 (11th Cir. 1993). A fact is material if it might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court "should resolve all reasonable doubts about the facts in favor of the non-moving party, and draw all justifiable inferences in his favor." *United States v. Four Parcels of Real Prop.*, 941 F.2d. 1428, 1437 (11th Cir. 1991).

A. *Whether Defendants Have a Lien on the Executive Stock and Proceeds from Sale of Real Estate*

Under Georgia law, "[a]ll judgments obtained in the . . . courts of this state . . .

10

shall bind all the property of the defendant in judgment, both real and personal, from the date of such judgments except as otherwise provided in this Code."  O.C.G.A. § 9-12-80. "[J]udgments do not automatically attach to choses in action," such as "proceeds from a contract performance, the right of a creditor to be paid on a debt, partnership interests" . . . and corporate stock.  *In re Wisner*, 2018 WL 4808380, at *5 (Bankr. N.D. Ga. Oct. 2, 2018) (citing O.C.G.A. § 9-13-57 ("Choses in action are not liable to be seized and sold under execution, unless made so specially by statute."); O.C.G.A. § 44-12-20 (defining a chose in action as "personalty to which the owner has a right of possession in the future or a right of immediate possession which is being wrongfully withheld"); *Prodigy Centers/Atlanta No. 1 L.P. v. T-C Assocs., Ltd*., 269 Ga. 522, 501 S.E.2d 209 (1998); *Fourth Nat. Bank v. Swift & Co*., 160 Ga. 372, 127 S.E. 729 (1925)).  Instead, a creditor must "initiate a garnishment or similar collateral proceeding to attach a judgment lien to a chose in action and before such time a judgment debtor can freely transfer choses in action." *Wisner*, 2018 WL 4808380, at *7; *In re Sapp*, 2015 WL 1578738, at *3 (Bankr. S.D. Ga. Apr. 2, 2015) (holding that creditor's judicial lien did not attach to settlement proceeds resulting from debtor's interest to one half of his marital residence because debtor's interest was a chose in action and creditor took no steps to attach its lien to that chose in action).

Under the facts of this case, Plaintiff correctly argues that Defendants' judicial lien

11

did not automatically attach to the Executive Stock or the proceeds from the sale of the office building owned by Executive.  Plaintiff asserts that the undisputed facts show that Defendants did not take any action to cause the judicial lien to attach to these assets. Further, Defendants have asserted that any equitable lien that exists arose because Debtor fraudulently transferred property to avoid their collection efforts, but the undisputed facts show that Debtor never transferred the Executive Stock.  Accordingly, Plaintiff is entitled to summary judgment as to the lien status of the Executive Stock and the proceeds of the sale of Executive's office building.  Defendants have no liens on these assets.  *See Sapp*, 2015 WL 1578738, at *2; *In re Rose Marine, Inc.*, 203 B.R. 511, 514 (Bankr. S.D. Ga. 1996).

B. *Whether Defendants Have a Lien on the Settlement Proceeds*

When a debtor files a Chapter 7 bankruptcy case, the automatic stay applies to a creditor's action to avoid as fraudulent a prepetition transfer of a debtor's interest in property.  *See In re Zwirn*, 362 B.R. 536 (Bankr. S.D. Fla. 2007) (recognizing the split of authority); *In re Saunders*, 101 B.R. 303 (1989) (holding that fraudulently transferred property is not property of the estate until it is recovered, at which point it is property of the estate under § 541(a)(3), but § 362(a)(1) stays a suit to recover the property by any party other than the trustee); *In re Van Diepen, P.A.*, 236 F. App'x. 498, 503 (11th Cir. 2007) (citing *Saunders* for the proposition that suits to recover fraudulent conveyances

12

are stayed and that the trustee steps in the shoes of creditors to pursue the property for the benefit of all creditors, rather than merely creditors who have won the race to judgment); *In re Tessmer*, 329 B.R. 776, 778–80 (Bankr. M.D. Ga. 2005); *In re Manton*, 585 B.R. 630, 638 (Bankr. N.D. Ga. 2018).  The "commencement of bankruptcy gives the trustee the right to pursue recovery of fraudulently conveyed assets to the exclusion of all creditors."  *Id.* at 779 (citing *In re Integrated Agri. Inc.*, 313 B.R. 419, 427 (Bankr. C.D. Ill. 2004)); *Manton*, 585 B.R. at 635 ("Only the chapter 7 trustee may prosecute a fraudulent transfer action once a debtor files for bankruptcy."); *In re Stein*, 314 B.R. 306, 311 (D.N.J. 2004)).

Although the trustee has the exclusive authority to recover fraudulent transfers, if a party has a valid lien on the property recovered, the trustee takes the recovered property into the bankruptcy estate subject to that lien.  *Ivester v. Miller*, 398 B.R. 408, 431 (M.D.N.C. 2008) (finding that creditor had valid attachment lien on real property that was fraudulently conveyed) (citing *Claussen Concrete Co. v. Walker (In re Lively),* 74 B.R. 238, 239–40 (S.D. Ga. 1987)); *see also In re Speir*, 190 B.R. 657, 664 (Bankr. N.D. Ala. 1995); *In re Amtron, Inc.*, 192 B.R. 130, 131–32 (Bankr. D. S.C. 1995) ("[O]nce a property comes back into the estate, it is available to marshal among unsecured creditors, subject first to the right of payment of secured creditors with perfected liens on the property."); *In re Veterans Choice Mortg.*, 291 B.R. 894, 895-96 (Bankr. S.D. Ga. 2003)

("[T]he property rights and priorities of secured creditors outside of bankruptcy are preserved."); *In re Leonard*, 125 F.3d 543, 544 (7th Cir. 1997) (recognizing that, if judgment creditors held a valid lien that exceeded the amount of the transferred property, "there is no point in the Trustee's pursuing the action, for there would be no net benefit to the other creditors").[3]

"Under section 544 of the Bankruptcy Code, a trustee on the date of the petition enjoys the status of, or may avoid any transfer of property of the debtor that is avoidable by, a hypothetical judicial lien creditor and, as to real property, a hypothetical bona fide purchaser." *Ivester v. Miller*, 398 B.R. 408, 415 (M.D.N.C. 2008) (citing 11 U.S.C. § 544(a)(1)-(3)). "Exercising his 'strong arm powers,' a trustee can disregard the rights of subsequent creditors taking priority after him, but his rights are subordinate to those with valid liens as of the petition date. *Id.* § 544(a)(1), (3); *Perlow v. Perlow,* 128 B.R. 412, 415 (E.D.N.C. 1991)." *Id.* at 416. For this purpose, the validity of a lien is determined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

In this case, Plaintiff appears to have settled the avoidance actions and will not be recovering the actual transferred assets. The Court assumes that Defendants would assert

---

[3] There is a split of authority regarding this point when the property recovered is subject to a lien resulting from a security agreement. *See generally* Kenneth Pasquale and Mariloly Orozco, *Playing for Keeps: The Treatment of Prepetition Security Interests in Property Recovered Through Bankruptcy Avoidance Actions,* 2017 Ann. Surv. of Bankr. Law 9. Courts have specifically held that § 552 does not apply when the property recovered is subject to a judicial lien. *See In re Wisner*, 2018 WL 4808380, at *9 (Bankr. N.D. Ga. Oct. 2, 2018).

that the Settlement Proceeds are the proceeds of their collateral (the transferred assets) and, therefore, their lien attached to the Settlement Proceeds.

"Some courts have taken the position that 'a prepetition lien or security interest will attach to an avoidance recovery if, but only if, what is recovered is clearly identifiable as the collateral itself or as the proceeds of prepetition collateral, and if the creditor's security interest would be enforceable against the transferee outside of bankruptcy.'" *In re Soares*, 380 B.R. 109, 113 (Bankr. D. Mass. 2007); *see also In re Figearo*, 79 B.R. 914, 918 (Bankr. D. Nev. 1987) (holding that, in the case of prepetition perfected security interest, the "successful exercise of the trustee's avoiding power causes the affected transfer to become void, allowing the trustee to recover the property under 11 U.S.C. § 550," but any property recovered by the trustee remained subject to any security interest that existed at the time the debtor transferred the property and the settlement proceeds resulting from the compromise of the avoidance action is also encumbered by the security interest). Courts have recognized that, allowing a trustee to recover property free of security interests or liens improperly allows recovery of a "greater interest in the property than that held by" the debtor prior to the transfer. *Figearo*, 79 B.R. at 918.

The record is unclear as to the nature of the Settlement Proceeds. The Court can only surmise, based on documents filed and actions taken by Plaintiff in the Bankruptcy Case, that the Settlement Proceeds are the proceeds of the Estate's right to avoid certain

15

transfers of assets made by Debtor to Hardin.  The Court cannot determine the exact makeup of the avoidance claims or whether the Settlement Proceeds represent compensation for other causes of action that may have been compromised.  Further, because of this subsequent development, the parties have not had an adequate opportunity to address the question of whether Defendants' asserted lien, to the extent it encumbered the transferred assets, attached to the Settlement Proceeds.  Nonetheless, the Court will consider Plaintiff's arguments as to why Defendants could not have had any lien on the transferred assets.

    1.  <u>Defendants' Judicial Lien</u>

Plaintiff asserts that the Judgment did not attach to any property recoverable by the Estate because Debtor had already transferred the cash and real estate before Defendants obtained the Judgment, even if he had owned the Farmhouse and the Lake House, Defendants had not taken steps to attach the Judgment under Georgia law.  *See Synovus Bank v. Kelley*, 309 Ga. 654, 654, 847 S.E.2d 592, 593 (2020) (holding that "as between the judgment creditor and judgment debtor, a lien on the title to real property is not created until the judgment is recorded, that the date of that lien is the date of recording, and the date of the lien does not relate back to the date the judgment was entered").  Specifically, Plaintiff argues that, even if Debtor had owned the real estate, Defendants failed to record the Judgment in the counties in which the Lake House and the Farmhouse

16

are located.  For this reason, the Court agrees that, with the possible exception of the Home, the Judgment could not attach to any of Hardin's real estate.

One could argue that the Judgment attached to the Home because Defendants recorded the Fi Fa in Gwinnett County after the transfer of the Home but prior to the Petition Date.  *See generally In re Johnson,* 593 B.R. 895, 910 (Bankr. N.D. Ga. 2018) ("In the case of a void transfer, Georgia law provides that the judgment liens obtained by existing creditors may attach to such property.").  In *Johnson*, the court noted that, under Georgia's former law, O.C.G.A. § 18-2-22, title to property transferred with an actual intent to defraud creditors remained "in the debtor subject to subsequent judgments in favor of his creditors."  *Johnson,* 593 B.R. at 910 n.34 (citing *United States v. Reid*, 127 F. Supp.2d 1361, 1380 (S.D. Ga. 2000); *Coleman v. Law*, 170 Ga. 906, 910, 154 S.E. 445 (1930) ("Judgments bind all property which the defendants therein may have conveyed away, prior to the rendition of the judgment, with the intention to delay, hinder, or defraud creditors, where such intention is known to the party taking it. Section 3224(2). This is so for the reason that such conveyances are declared void, and the title to property so conveyed remains in the judgment debtors subject to judgments subsequently obtained."); *In re Lively*, 74 B.R. 238 (S.D. Ga. 1987), *aff'd* sub nom. without opinion, *Walker v. Claussen Concrete Co.*, 851 F.2d 363 (11th Cir. 1988); 1 G. Glenn, *Fraudulent Conveyances and Preferences*, § 121, at 234-35 (Rev. ed. 1940)).

17

One commentator has referred to such judicial liens as "shine through" liens.  *See* David Gray Carlson*, Fraudulent Transfers: Void and Voidable*, 29 Am. Bankr. Inst. L. Rev. 1, 15 (2021).  As Professor Carlson explains, whether a lien "shines through" depends upon whether, under the applicable nonbankruptcy law, a fraudulent transfer of property is deemed to be void or merely voidable.  If the transfer is void, the judicial lien is considered to have attached to the transferred property, notwithstanding the fact that the transferor did not own legal title to the property at the time the judgment was obtained and recorded, because ownership of the property was never actually transferred.  *See, e.g., In re Johnson,* 593 B.R. 895, 910 (Bankr. N.D. Ga. 2018) (*"In the case of a void transfer, Georgia law provides that the judgment liens obtained by existing creditors may attach to such property."); *In re Full of Faith Ministries, Inc.,* 2014 WL 575754, at *5 (Bankr. M.D. Fla. Jan. 27, 2014) (holding that, where the court made a finding that debtor transferred property fraudulently and applicable nonbankruptcy law (Florida law) provided that "title to the transferred property remained with the Debtor at the time that the Judgment was entered," the "recordation of the Judgment created a lien on the property"); *In re Amtron, Inc.*, 192 B.R. 130, 132 (Bankr. D.S.C. 1995) (tax lien perfected post-fraudulent transfer attached to property recovered by the trustee because fraudulent conveyances are void under applicable South Carolina law).  "The theory underlying the rule, as expressed in [these decisions], is that a judgment creditor should be permitted to

18

treat a 'transfer by connivance' as a nullity to the extent of the creditor's enforcement of its judgment." *Full of Faith Ministries, Inc.*, 2014 WL 575754, at *3. Application of this rule in a bankruptcy context "preserves the rights that secured creditors possess outside of bankruptcy, including the right to recover transferred property to satisfy their claims." *Id.* (quoting *In re Veterans Choice Mortg.*, 291 B.R. 894, 897 (Bankr. S.D. Ga. 2003)).

If the transfer is merely voidable, the judgment does not attach to the property to be recovered because the property was not owned by the judgment debtor at the time the judgment was obtained. *See, e.g., In re Lowenstein*, 361 B.R. 326, 336 (Bankr. D. Mass. 2007) (holding that, under Massachusetts law, fraudulent transfers are voidable, such that, "even assuming the settlement proceeds could be traced to the Debtor's property, absent a judgment in favor of the Trustee avoiding the transfers, the real property transferred did not belong to the Debtor at the time the lien in favor of the United States arose, at the commencement of the bankruptcy case, or at the time the Settlement Motion was approved by the Court"); *In re Westpark One, LLC*, 2015 WL 5199368, at *4 (Bankr. D. Ariz. Sept. 4, 2015) (holding that judgment creditor's lien did not attach to property recovered by a bankruptcy trustee because, under Arizona's UFTA, fraudulent transfers are not void *ab initio*, but merely voidable).

Professor Carlson posits that the void nature of fraudulent transfers and the ability of a judicial lien creditor to ignore the fact that the debtor conveyed property to a third

19

party is inherent in the Uniform Fraudulent Conveyance Act, which provides a remedy to creditors with a matured claim—the option to "[d]isregard the conveyance and attach or levy execution upon the property conveyed." Carlson, at 11. He concludes that transfers under the UFTA, and now the UVTA, are both "void" and "voidable," as the more modern uniform law retained the remedy of disregarding the transfer. He notes, however, that a court must now order a levy against the transferee's property, supporting the argument that such transfers are merely voidable. *Id.; see also* UNIF. VOIDABLE TRANSACTIONS ACT § 7(b) (Unif. L. Comm'n 2014) ("If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds."); O.C.G.A. § 18-2-77(b).

The Court is inclined to agree with *In re Westpark One, LLC*, 2015 WL 5199368, at *4 (Bankr. D. Ariz. Sept. 4, 2015), that Georgia's adoption of the UFTA, and later the UVTA, changed the nature of fraudulent transfers under Georgia law, such that a prepetition judgment, even one that has been recorded in the correct county prior to the bankruptcy filing, does not attach to transferred property in the hands of the transferee.[4]

---

[4] If not and the Home remained the property of Debtor, the Court would agree with Plaintiff that Plaintiff is cloaked with the status of a hypothetical *bona fide* purchaser of the Home from Debtor. *See* 11 U.S.C. § 544(a)(3); *see also In re Myers*, 320 B.R. 667, 669 (Bankr. N.D. Ind. 2005) (explaining that "section 544(a) gives the trustee all 'the rights and powers of' that perfect hypothetical creditor, not just its ability to avoid"). Yet the Court would likely be unable to find that Plaintiff lacked notice of Defendants' lien, given the filing of the *lis pendens*, and, therefore, Plaintiff could not establish that a *bona fide* purchaser could have taken Debtor's interest in the Home free of Defendants' lien.

*See* Carlson at 16 (citing *In re Harman*, 243 B.R. 671 (Bankr. N.D. Tex. 1999) ("Now, in Texas [under the UFTA], legal title does not remain with the debtor and the court cannot assume that the creditor obtains a lien as if the transfer had not been made. Fact, not fiction, now prevails. The transfer had been made.").  As the parties have not addressed this point in their briefs, the Court will not rule conclusively on this issue at this time.[5]

### 2. Defendants' Equitable Lien

Zurich states that, while "it is true that Zurich did not record its judgment on the county indexes of applicable property records pursuant to Georgia Code Annotated § 9-12-86 . . . . it is because [Debtor] fraudulently transferred all of his real property to his wife Linda Hardin without value in order to thwart Zurich's collection[,]" and, because "the real property was not in [Debtor's] name, Zurich could not record its judgment against the properties."  This misconduct, Zurich argues, provides the basis for its equitable lien.  Zurich relies on *Country Greens Vill. One Owner's Ass'n, Inc. v. Meyers*, 281 S.E.2d 346, 349 (Ga. Ct. App. 1981) (citing *Chapple v. Hight*, 131 S.E. 505 (Ga. 1926); *Murphey, Taylor etc., Inc. v. Williams*, 153 S.E.2d 542 (Ga. 1967)), for the

---

[5] In the event the Court concludes that Defendants' judicial lien attached to the Home, the parties would also need to address the question of what impact, if any, the settlement of the Estate's claims without any judicial finding of fraud had on the lien.  *See, e.g., In re Lowenstein*, 361 B.R. 326, 336, 334 (Bankr. D. Mass. 2007); *In re Soares*, 380 B.R. 109, 114 (Bankr. D. Mass. 2007) ("No fraudulent transfers were avoided, and I did not rule on the merits of his claim. The Service was served with the Motion, but did not object or seek clarification of the treatment of its claim with respect to the Settlement Proceeds.").

proposition that "the Georgia Supreme Court has long 'held that a special lien on specific property may be decreed whenever under the rules of equity the circumstances require this remedy.'"  According to Zurich, because Debtor's fraud was "the sole reason that Zurich was not able to perfect a statutory lien," an equitable lien is warranted.

In response, Plaintiff states that Defendants' cited cases stand only for the general proposition that equitable liens can be imposed under Georgia law, but Defendants have not cited, and Plaintiff has not located any, cases in which a creditor was granted an equitable lien on the basis of a fraudulent transfer.  Plaintiff's arguments against an equitable lien stem from arguments that the UVTA provided Zurich with an adequate remedy at law, that any equitable lien Zurich might have or have had would be subject to Trustee's status as hypothetical BFP, and that "the Bankruptcy Code's scheme for establishing equity among all creditors controls."  (Doc. 17, pp. 21-23).  Plaintiff reasons that allowing an equitable lien would encourage the "race to the courthouse" that the Bankruptcy Code, through its preference provisions, tries to prevent.  Defendants appear to argue that ruling in their favor would not be inequitable as to Debtor's unsecured creditors because Defendants had already won the race to the courthouse by obtaining a judgment and filing suit to avoid the fraudulent conveyance.

As to the first issue, like Plaintiff, the Court has located no Georgia cases specifically imposing an "equitable lien" or constructive trust on property simply because

22

it was fraudulently transferred.  Professor Carlson explains that state fraudulent transfer laws have both legal and equitable components.  "'Law' (Esau to equity's Jacob) viewed fraudulent transfers as void ab initio. On this view, a fraudulent transfer is not a transfer at all, at least insofar as C is concerned. C could treat X's thing as if it were still D's thing. C's judicial lien attached to X's thing accordingly. Equity, however, viewed fraudulent transfers as 'voidable.' On this view, when D fraudulently transfers a thing to X, D's act of alienation is complete. D no longer has any title in the item transferred. Rather, X has title. X, however, holds the property in trust for the creditors of C. The conveyance being fraudulent, C is invited to have the conveyance set aside. What once was D's property is D's property again, and C is able to obtain the coveted judicial lien on X's thing. The lien implies that C may liquidate X's thing in order to satisfy C's judgment against D. Thus, to the law lords, a fraudulent transfer is no transfer. It is void. It never happened. To the chancellor, the transfer is absolutely effective until it is avoided or 'set aside.'"  Carlson, at 4.  Accordingly, the equitable remedy available to all creditors was to file a UFTA suit. The Court finds that there is no basis outside of that process to award one particular creditor an equitable lien on transferred property or its proceeds solely because of Debtor's alleged inequitable conduct of transferring assets to avoid collection.

That being said, Professor Carlson notes that, historically, the commencement of a fraudulent transfer action created an equitable lien on the transferred property in cases in

23

which a judgment did not create a lien on real estate because, for example, the judgment was obtained in federal court.  Carlson, at 37 ("In such a case, commencement of the set-aside against X brings the property *in custodia legis*. This creates a lien on X's property.").  "Properly, commencing the set-aside action against X should result in a lien for [Creditor] as to the property fraudulently received by X. At this moment, the property is *in custodia legis*. This was recognized by the Supreme Court in *Metcalf Brothers & Co. v. Barker*, [187 U.S. 165, 172, 175 (1902)], applying New York law."  *Id*. at 34; *see also In re Johnson*, 593 B.R. 895, 912 (Bankr. N.D. Ga. 2018) (recognizing the possibility of an equitable lien in favor of the "diligent creditor" who filed an avoidance action, but finding that, even if the lien creditor could establish the existence of an equitable lien on fraudulently transferred property, the commencement of the avoidance suit by the creditor occurred after the recordation of another lien, and, although the creditor was "the diligent creditor who initiated" the avoidance action, there was "no legal basis to displace the existing priorities of valid judgment liens just because he did so").

As to more modern practice, the Court finds two cases potentially instructive. First, in *Giffin v. Edwards,* 708 N.E.2d 876 (Ind. Ct. App. 1999), the Indiana Court of Appeals considered the "interrelationship of state law and bankruptcy law, and the proper methods, under Indiana law, for obtaining a lien on real estate where the real estate has been conveyed to a third party, the creditor obtains a money judgment against the

24

transferor/debtor and brings an action for fraudulent conveyance, and the transferor/debtor then files for bankruptcy." *Id.* at 877. The court explained that the creditor's initiation of a fraudulent conveyance suit created an equitable lien, which would have subjected the real estate in question to execution should the fraudulent transfer action be decided in the creditor's favor. The *Giffin* court noted that such a creditor is secured "conditioned on his prevailing in [the fraudulent conveyance] action" and his "rights would then take priority over those of the trustee*." Id.* at 880. Therefore, under this theory, "the trustee cannot be substituted for [creditor]" in such an action. *Id.* This holding supports the position that the filing of an avoidance action coupled with notice of *lis pendens* creates an equitable lien on fraudulently transferred property. *Id.*; s*ee also Shepler v. Whalen*, 119 P.3d 1084, 1090 (Colo. 2005); *Emarine v. Haley*, 892 P.2d 343, 348–49 (Colo. App. 1994) (holding that a fraudulent conveyance claim and notice of *lis pendens* established an equitable interest in property that took first priority in the proceeds of the sale of the property). If this rule applies in Georgia, arguably, Defendants had a right to the Home that was different than the rights of Debtor's other creditors on the Petition Date.[6]

---

[6] Nonetheless, the fact that Defendants never completed the successful prosecution of the Fraudulent Transfer Case arguably prevented the equitable lien from attaching to the Home and, therefore, no lien would exist to elevate Defendants' right to the Home or the Settlement Proceeds above those of Debtor's other creditors. *See In re Lavenhar*, 2014 WL 4232500, at *4 (D. Colo. Aug. 25, 2014), *aff'd*, 808 F.3d 794 (10th Cir. 2015) (stating that creditor who initiated an avoidance action but did not complete its prosecution prior to the debtor's bankruptcy filing had no lien); *In re Loc. Serv. Corp.*, 503 B.R. 136, 140 (Bankr. D. Colo. 2013) ("When a judgment creditor seeks to

The second is *In re Leonard*, 125 F.3d 543 (7th Cir. 1997), in which the Seventh Circuit Court of Appeals held that filing a fraudulent conveyance action alone did not create an equitable lien under Illinois law.  In *Leonard*, debtor breached a contract, which led to a jury verdict for damages.  Prior to the jury verdict, the debtor transferred land to his son.  When the creditors learned of the "gift," they sued the debtor and the son to avoid the conveyance and recorded a *lis pendens* on the property. Thereafter, debtor filed a Chapter 7 case.  After the Chapter 7 trustee removed the fraudulent conveyance action to the bankruptcy court, the creditors moved for relief from the automatic stay and asked the bankruptcy court to order the trustee to abandon the fraudulent conveyance suit.  The creditors argued that, because they had commenced the suit to set aside the conveyance and had filed a *lis pendens*, they had a lien on the land that exceeded its value, such that "there would be no net benefit to the other creditors" if the trustee pursued the claim. *Id*. at 544.  The bankruptcy court denied both requests, concluding that the creditors did not have a lien.  *Id*.

On appeal, both the district court and the circuit court affirmed.  The Seventh Circuit explained that the trustee had the power under § 544(b) to avoid the transfer and,

---

obtain a lien on real property fraudulently transferred by the judgment debtor to another, it must first file an action to uncover the fraud, file a notice of *lis pendens*, *and then successfully prosecute the fraudulent conveyance action*.") (emphasis added).

because the avoidance claim was property of the estate, any recovery would be "divided among all the unsecured creditors, not just the creditor who could have reached the asset outside bankruptcy." *Id*. at 545.  The court did note, however, that the trustee's right to avoid the transfer would be subject to the creditors' rights if the creditors were secured. Whether the creditors had a lien on the son's land depended on state law.  *Id*. (citing *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979)).  Under Illinois law (735 ILCS 5/12–101), when the judgment against the debtor became final, the creditors could have obtained a lien on all of the debtor's real property by filing a copy of the judgment with the appropriate county office. But by then, the debtor had already transferred the land, and "a potential fraudulent-conveyance action to recover the land is not itself real property of the sort covered by § 5/12–101." *Id*. (citing *De Martini v. De Martini*, 385 Ill. 128, 133, 52 N.E.2d 138, 140 (1943)); *Hallorn v. Trum*, 125 Ill. 247, 252, 17 N.E. 823, 824 (1888)).

Having no judicial lien on the land, the creditors next argued that they had obtained an "equitable lien" on the land that arose upon their filing suit under the Uniform Fraudulent Transfer Act, 740 ILCS 160/1–12.  The court first concluded that "the Illinois *lis pendens* statute does not give the filer a lien," and, therefore, the creditors could prevail only if Illinois law recognizes the creation of a lien "just because" a creditor is the first creditor "to discover the transfer to [the son] and act on that knowledge by filing

suit." *Id*.  The creditors cited older cases in which a judgment creditor who was not first to

obtain a judgment but was first to file an avoidance action "achieved priority over a

judgment creditor who obtained (and filed) his judgment first but filed his fraudulent-

conveyance suit second."  *Id*. (citing *Union National Bank of Chicago v. Lane*, 177 Ill.

171, 52 N.E. 361 (1898); *Rappleye v. International Bank*, 93 Ill. 396 (1879); *Snow v.

Hogan*, 312 Ill.App. 636, 38 N.E.2d 934 (2d Dist.1942)).  The court rejected reliance on

these cases because they involved the filing of a "creditor's bill," which is a suit that

"asks a court of equity to force the debtor to transfer intangible property to the judgment

creditor or sell it to satisfy the judgment," a remedy necessary only in the case of

intangible property because "tangible property could be seized by the sheriff pursuant to a

writ of execution."  The court rejected that argument that a creditor's bill and a UFTA suit

are the same, noting that "in 1982 Illinois abolished the creditor's bill."  *Id*. at 546.  The

court also rejected the creditors' argument that the "equitable lien cases are part of the

common law of Illinois, which still supplements the UFTA, 740 ILCS 160/11."  *Id*.

Instead, the court concluded that no UFTA cases discuss the creation of an equitable lien

because the statutory remedies offered under the UFTA itself provide "a straightforward

way for a judgment creditor to obtain priority in bankruptcy."  *Id*.  The court concluded

that "[u]sing the approach of the prior law now that it has been displaced by the [UFTA]

and the [UCC] would be a bad idea," and that Illinois courts "would not follow such a

28

path."   Indeed, state courts would not need to rely on an equitable remedy when the UFTA provided "a method for the filer to attach property and obtain a lien."  *Id*.

This case appears to stand for the proposition that the UFTA is a legal remedy that prevents an equitable lien from arising on transferred property.  In such a case, a judicial lien creditor who seeks avoidance of a transfer is in no better position *vis a vis* the transferor's other creditors until the court has entered an order avoiding the transfer or authorizing attachment of the creditor's lien to the transferred property.  If this rule applies in Georgia, Defendants did not win the race to the courthouse before Debtor filed his bankruptcy petition and were similarly situated to Debtor's other creditors, such that they should share *pro rata* in any recovery that stemmed from Plaintiff's right to avoid the transfer of the Home.

Neither party has discussed the issues of whether Georgia law has ever recognized an equitable lien that arises upon the commencement of a fraudulent conveyance suit (or creditor's bill) and the filing of a *lis pendens*; whether the enactment of the UFTA and later the UVTA precludes such equitable relief; or if Georgia law does recognize an equitable lien in such cases, what impact the dismissal of the Fraudulent Transfer Case may have had on any such lien.  Plaintiff has relied solely on her contention that no Georgia cases have imposed an equitable lien on fraudulently transferred property and on the argument that equitable liens are "anathema" to bankruptcy because they disrupt the

*pro rata* distribution to similarly situated creditors.[7]  As noted above, there is an argument to be made that Defendants were not similarly situated creditors on the Petition Date but were instead entitled to priority as to any recovery that resulted from Plaintiff's claim to avoid the transfer of Debtor's interest in the Home.  If so, the Court must recognize Defendants' secured status.  *In re Gen. Coffee Corp.*, 828 F.2d 699, 704 (11th Cir. 1987) (concluding that, where constructive trust over funds in debtor's possession arose under Florida law prior to bankruptcy filing, equitable interest in the funds did not enter the bankruptcy estate).[8]

At this point, with no input on these issues from the parties and no clear guidance as to what a Georgia court would hold as to the creation of an equitable lien, the Court is not persuaded that Plaintiff has demonstrated her entitlement to judgment as a matter of

---

[7]  The Court notes that Plaintiff has also relied upon *In re Patel*, 607 B.R. 765 (Bankr. N.D. Ga. 2019), in which this Court denied summary judgment to a judgment creditor seeking a determination that its lien extended to all personal property held by the Chapter 7 trustee.  As Defendants argue, the creditor in *Patel* did not assert that it had an equitable lien on any property held by the Chapter 7 estate.  Instead, the creditor asserted that it was entitled to have the trustee surrender to it all personal property in the estate because creditor "held the senior most lien by virtue of holding a first priority deed."  Case 16-65074-lrc (Doc. 198). The creditor asserted that, having obtained a judgment, it had filed an avoidance action in regard to certain real property.  The real property referred to in the motion appears to have been property owned by a corporation, rather than the debtor, and the creditor presented no undisputed facts that would have allowed the Court to conclude that the trustee had settled any claims to avoid a transfer of that real estate, considering it does not appear to have belonged to the debtor.  *Id*. (Doc. 218).  In any event, the Court did not interpret the creditor's argument to be that its commencement of a fraudulent conveyance suit gave rise to an equitable lien and, therefore, does not find *Patel* to be dispositive as to any issues raised herein.

[8]  Plaintiff has asserted that her rights as a hypothetical lien creditor and *bona fide* purchaser of debtor's property would permit her to defeat Defendants' equitable lien on any property of the estate. *See* 11 U.S.C. § 544(a)(1)-(a)(3). Defendants have argued that Plaintiff has no such status with regard to property owned by Hardin on the Petition Date.  The Court need not resolve that dispute, as even if Plaintiff has the status of a *bona fide* purchaser with regard to the Home, the Court would likely be unable to find that Plaintiff lacked notice of Defendants' equitable lien, given the filing of the *lis pendens*, and, therefore, Plaintiff could not establish that a *bona fide* purchaser could have purchased the Home free of Defendants' lien.

law that Defendants can assert no lien on any portion of the Settlement Proceeds.  For this reason, the Court must deny Plaintiff's motion in part.[9]

### CONCLUSION

For the reasons stated herein, the Court finds that the Motion should be, and hereby is, **GRANTED in part** and **DENIED in part,** and

**IT IS ORDERED** that Plaintiff is entitled to judgment as a matter of law that Defendants have no lien on the Executive Stock and the proceeds of the sale of Executive's office building;

**IT IS FURTHER ORDERED** that all other requests for relief are denied.

### END OF DOCUMENT

---

[9] The Court is aware that a Motion to Quash Subpoena and for Protective Order (Doc. 28) and Linda Hardin's Joinder to Debtor's Motion to Quash Subpoena and for Protective Order (Doc. 29) remain pending.  The Court has deferred ruling on this discovery dispute pending a determination as to whether summary judgment would be granted.  Defendants should notify the Court as to whether the dispute remains outstanding.

**Distribution List**

Henry C. Hardin, III
3245 Town Manor Circle
Dacula, GA 30019

Leslie M. Pineyro
Jones and Walden, LLC
699 Piedmont Avenue NE
Atlanta, GA 30308

Cathy L. Scarver
P. O. Box 672587
Marietta, GA 30006

William Russell Patterson, Jr.
Ragsdale Beals Seigler Patterson & Gray
2400 International Tower
229 Peachtree Street NE
Atlanta, GA 30303-1629

Julie L. Young
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606